## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2016, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Spec. Asst. to the State Public Defender
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

A.F. (Minor Child),

and

D.F. (Father)

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

November 30, 2016

Court of Appeals Case No.
84A05-1604-JT-845

Appeal from the Vigo Circuit Court

The Honorable David R. Bolk, Judge

The Honorable Daniel W. Kelly, Magistrate

Trial Court Cause No.
84C01-1508-JT-1036

**Pyle, Judge.**

# Statement of the Case

D.F. ("Father") appeals following the involuntary termination of the parent-child relationship with his child, A.F. On appeal, Father does not challenge any of the trial court's findings or conclusions supporting its order to involuntarily terminate his parental rights. Instead, Father argues that his counsel rendered ineffective assistance of counsel by: (1) failing to present evidence of Father's incarceration as an excuse for why he did not visit with A.F.; and (2) failing to explain to the trial court that it was permissible to continue the termination hearing past the statutory deadline. Because Father has not shown that he was denied a fundamentally fair hearing whose facts demonstrated an accurate determination, we conclude that his ineffective assistance of counsel claims fail, and we affirm the trial court's judgment.

We affirm.[1]

# Issue

> Whether Father's counsel rendered ineffective assistance of counsel during the termination of parental rights hearing.

---

[1] The trial court held a separate termination hearing for A.F.'s mother ("Mother") a few months prior to Father's termination hearing and involuntarily terminated the parental rights of Mother. She is not involved in this appeal.

# Facts[2]

On October 2, 2014, the Vigo County Department of Child Services ("DCS") removed two-year-old A.F. from Father's home after Father and Mother were arrested, leaving A.F. without a caregiver.[3]  Specifically, Father was arrested on charges of criminal recklessness, battery resulting in bodily injury, and criminal trespass.

The following day, the DCS assessment manager, Leigh Elliott ("Elliott"), visited Father at the Vigo County Jail, and Father refused to take a drug screen. Elliott gave DCS's contact information to Father and instructed him to contact DCS when he was released from jail.  Father was released from jail on October 17, 2014, but he never contacted DCS.

DCS filed a petition alleging that A.F. was a child in need of services ("CHINS").  The trial court subsequently determined that A.F. was a CHINS and ordered Father to, among other things:  maintain weekly contact with DCS; actively participate in visitation with A.F.; complete a parenting assessment and a substance abuse assessment; notify DCS of any arrest or

---

[2] Because Mother is not involved in this appeal, we will focus our discussion of the relevant facts to Father's interaction with A.F. and DCS.

[3] DCS had previously received reports regarding Father and Mother's lack of care of A.F. due to their methamphetamine use and unsanitary home conditions.  These previous reports occurred in August 2014, September 2013, February 2013, and November 2013.  DCS, however, was unable to complete an assessment at those times because it had been unable to locate Father and Mother.

criminal charges; refrain from using drugs; and participate in individual counseling, group counseling, and a Fatherhood Engagement program.

[6] Father, however, did not keep in contact with DCS, never visited with A.F., and, with exception of the Fatherhood Engagement program, did not voluntarily participate in any other court-ordered services.[4] Additionally, in November 2014, during the pendency of the CHINS proceeding, Father was arrested for Level 6 felony possession of methamphetamine.

[7] On August 18, 2015, DCS filed a petition to terminate Father's parental rights to A.F. Thereafter, the trial court appointed Derrick Thompson as the court appointed special advocate ("CASA").

[8] On September 18, 2015, the DCS family case manager and the CASA visited Father at the Putnumville Correctional Facility, where he was serving a two-year sentence for his Level 6 felony possession of methamphetamine conviction. Father told them that he did not want to voluntarily terminate his rights. He stated that he missed A.F., that he was participating in programs in prison, and that he wanted to get sober and get a job. A few days later, on September 22, 2015, Father, who was still incarcerated, filed a pro se petition seeking visitation under INDIANA CODE § 31-14-14-1, the paternity statute for non-custodial parents seeking to obtain parenting time rights.

---

[4] DCS was able to get Father to complete the Fatherhood Engagement when he was incarcerated sometime after December 2014.

[9] In November 2015, the CASA filed his report with the trial court. In his report, the CASA acknowledged that when he visited Father in prison, Father had stated that he had participated in prison programs for anger management and addictions counseling and had indicated that he wanted to get a job and an apartment. The CASA, however, noted that it was in A.F.'s best interest to have Father's parental rights terminated based on Father's criminal history, his continued incarceration, and the "uncertainty" of Father's future. (App. 28; DCS Ex. C).

[10] On February 9, 2016, the trial court held the termination hearing.[5] Father was present at the hearing and represented by counsel. At the time of the termination hearing, A.F. was almost four years old and had not had any contact with Father since his removal from Father's home in October 2014. Also at the time of hearing, Father was still incarcerated, with an earliest possible release date of July 21, 2016. Additionally, Father had pending charges for two counts of Level 6 felony maintaining a common nuisance and one count of Class A misdemeanor possession of paraphernalia, and his jury trial for those charges was set for June 1, 2016.

[11] At the beginning of the termination hearing, Father's counsel made an oral motion to continue the termination hearing "for a period of about six months."

---

[5] The termination hearing for Mother was held on December 28, 2015. The record on appeal reveals that three of DCS' exhibits—Exhibits A, B, and C—were introduced without objection during Mother's termination hearing and then carried over to Father's termination hearing.

(Tr. 3). Counsel stated that Father believed that he might "possibl[y]" be released early from prison in April. (Tr. 3). Counsel also stated that Father wanted an opportunity to be "released back into society" and wanted "to show how things [were] going to be different in his life" and how it would "impact his ability to still be a caregiver for his child." (Tr. 3). DCS objected, noting the "statutory time frames" associated with termination proceedings and stating that the termination matter had been pending since August 2015.[6] (Tr. 3-4). DCS also pointed out that Father still had a pending criminal trial scheduled for June 1, 2016.

[12] The trial court denied Father's oral request to continue the hearing, stating, in relevant part:

> Okay. I think due to the law requiring that these be conducted in a timely manner that it would be almost impossible . . . I think it would be impossible. We're pretty much at the limit now of when we're supposed to have these concluded by. But obviously, that doesn't prevent Father from raising evidence of what his circumstances in the near future will be, which I expect we'll hear. So we'll go ahead and proceed then with the hearing.

(Tr. 4). Father's counsel responded, "Thank you." (Tr. 4).

---

[6] Pursuant to INDIANA CODE § 31-35-2-6(a)(2), a trial court is required to complete a termination hearing within 180 days after a petition to terminate parental rights has been filed. Here, DCS filed the termination petition on August 18, 2015, and 180 days from that date was February 14, 2016.

[13]     Thereafter, DCS presented its witnesses, and Father's counsel cross-examined each of them. In relevant part, the DCS family case manager, Nicholas Davis ("FCM Davis"), testified regarding Father's failure to complete court-ordered services. He also testified about Father's criminal history[7] and stated that he believed that Father had been incarcerated from October 2-17, 2014 and then again in June 2015 until the time of the termination hearing. FCM Davis also testified that Father had neither contacted DCS nor had any visitation with A.F. during the time period when he was out of jail. Additionally, he testified that it was in A.F.'s best interest to have Father's parental rights terminated.

[14]     Father's counsel cross-examined FCM Davis about Father's criminal history and specifically questioned him about Father's September 2014 charges and arrest that had led to A.F.'s removal from the home. When Father's counsel asked whether Father had been convicted of any of those charges, FCM Davis referred to a chronological case summary ("CCS") to answer the question. Because FCM Davis was referring to a CCS, the DCS attorney offered to mark it as an exhibit, and Father's counsel declined, stating "I would just like to know whether . . . if he was convicted and what he was convicted of. That's all

---

[7] FCM Davis testified that Father had been arrested for: operating a vehicle without a license in February 2011; possession of methamphetamine and driving while suspended in December 2013; criminal recklessness, battery resulting in bodily injury, and criminal trespass in September 2014; resisting law enforcement in October 2014; possession of methamphetamine and driving while suspended in November 2014; and maintaining a common nuisance and possession of paraphernalia in June 2015.

I'd like to know." (Tr. 26).[8] Thereafter, FCM Davis responded that Father had pled guilty to and had been convicted of criminal recklessness and criminal trespass.

[15] After DCS rested, Father's counsel requested a brief recess to talk to Father. Father did not testify or present any witnesses. Thereafter, the trial court entered an order involuntarily terminating Father's parental rights to A.F. In relevant part, the trial court concluded that the conditions leading to A.F.'s removal would not be remedied and that termination was in A.F.'s best interest. Father now appeals.

## Decision

[16] On appeal, Father does not challenge any of the trial court's findings or conclusions supporting its order to involuntary terminate his parent-child relationship with A.F. Additionally, Father does not appeal the denial of his motion for a continuation of the termination hearing. Instead, he presents a single issue for our review and argues that his counsel rendered ineffective assistance during the termination hearing. Specifically, he contends that counsel was ineffective by: (1) failing to present evidence of his incarceration—which he considers to be "favorable evidence"—as an excuse for why he did not visit with A.F. between mid-November 2014 and late January 2015; and (2)

---

[8] In his appellate brief, Father incorrectly asserts that it was Father's counsel who inquired whether the CCS should be marked as an exhibit and that it was the trial court who responded that it just wanted to know whether Father had been convicted of any charges. The transcript, however, clearly shows otherwise.

failing to explain to the trial court that it was permissible to continue the termination hearing past the statutory deadline.

[17] Our Indiana Supreme Court has set forth the standard of review for an ineffective assistance of counsel claim that stems from a termination of parental rights proceeding:

> Where parents whose rights were terminated upon trial claim on appeal that their lawyer underperformed, we deem the focus of the inquiry to be whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination. The question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest.

*Baker v. Marion Cnty. Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004).[9]

[18] Applying this standard to Father's claims of ineffectiveness, we conclude that his claims are without merit. Father has failed to show how counsel's purportedly deficient performance rendered the termination hearing unfair or

---

[9] The *Baker* Court noted that this review of the effectiveness of counsel in a termination proceeding is "similar" to the review of the effectiveness of post-conviction counsel set forth in *Baum v. State*, 533 N.E.2d 1200 (Ind. 1989). *Baker*, 810 N.E.2d at 1041 n.6 (explaining that the focus of an ineffective assistance of post-conviction counsel claim was whether counsel "in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of a court").

how it would undermine this Court's confidence in the accuracy of the trial court's conclusions.

[19] Rather than focusing on counsel's overall performance—as we are directed to do by the *Baker* Court—Father's ineffectiveness arguments focus on his counsel's *specific* actions or omissions (i.e., failing to introduce specific evidence regarding his incarceration and lack of visitation and failing to rebuke the trial court for its understanding of the termination statute's provision regarding the time period to conduct a termination hearing). Additionally, as noted above, Father does not challenge the trial court's conclusion that the conditions leading to A.F.'s removal would not be remedied nor the conclusion that termination was in A.F.'s best interest. Indeed, Father does not dispute that, from the time A.F. was removed in October 2014 to the time of the termination hearing in February 2016, Father never visited A.F. or contacted the DCS family case manager. Thus, Father has not shown that his counsel's overall performance was so defective that it would leave our Court unable to conclude with confidence that the conditions leading to the removal of A.F. from Father's care were unlikely to be remedied and that termination was in the child's best interest.

[20] Moreover, Father has failed to point to anything to show that he received a fundamentally unfair hearing whose facts demonstrate an inaccurate determination. Our review of the record reveals that Father's counsel carefully cross-examined each of DCS's witnesses. In fact, Father's counsel objected to part of the CASA's testimony and had the objection sustained, thereby

excluding the objected-to testimony. During his cross-examination of FCM Davis and the CASA, Father's counsel introduced an exhibit into evidence and elicited testimony regarding their visit to Father while he was incarcerated in September 2015 and regarding Father's report that he had been participating in some prison programs and that he wanted to visit with A.F. Moreover, the record reveals that Father's counsel consulted with Father before determining that they would not present any further evidence during Father's case-in-chief.

[21] Given Father's counsels' efforts and the underlying facts of Father's failure to engage in services and visit with A.F. (which he does not challenge on appeal), we conclude that Father's termination hearing was not fundamentally unfair, and we can say with confidence that DCS adequately proved its case in favor of termination of Father's parental rights. Accordingly, we affirm the trial court order terminating Father's parental rights to A.F. *See, e.g.*, *Baker*, 810 N.E.2d at 1042 (holding that the parents' ineffective assistance of counsel claim to be "untenable" because there was no showing that they had a fundamentally unfair hearing); *In re A.P.*, 882 N.E.2d 799, 806 (Ind. Ct. App. 2008) (concluding that the father had not shown that his counsel rendered ineffective assistance and affirming the termination of the father's parental rights), *reh'g denied*.

[22] Affirmed.

Bradford, J. and Altice, J., concur.